# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MICHAEL WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08-cv-0285-SCW** |
| | ) | |
| **MARK BOOZER and PAUL MCGUIRE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER FOLLOWING BENCH TRIAL

**WILLIAMS**, **Magistrate Judge:**

Having considered the evidence introduced and the legal arguments made at the two-day bench trial held on September 13-14, 2011, the Court makes the following findings of fact and conclusions of law:

### INTRODUCTION

Plaintiff Michael Williams ("Mr. Williams"), an inmate in the Illinois Department of Corrections, filed this lawsuit in April 2008 against Defendants Mark Boozer and Jerry McQuire.[1]   He alleges that—in violation of his constitutional rights pursuant to the Eighth Amendment—the Defendants were deliberately indifferent to his serious medical needs when they made him wear state-issued working boots while he served as a porter in the administrative segregation unit, in spite of having a medical permission slip to wear gym shoes due to issues arising from his diabetes.

### FINDINGS OF FACT

The Court adopts the Uncontroverted Facts found in the Final Pretrial Order (Doc. 70). Plaintiff Michael Williams is a diabetic, and at all times relevant to this dispute he was a general population inmate housed at the Pinckneyville Correctional Center (PCC).  On March 8, 2006, Mr.

---

[1] On August 15, 2011, the Court granted Defendants' oral motion under Fed. R. Civ. P. 25 to change and correct the name of Defendant Jerry McQuire to Paul McGuire (*see* Doc. 68).

Williams was assigned to work as a porter in the administrative segregation unit (Zone 5) (Pltf's Ex. 1). On the first day of his new job assignment, Mr. Williams reported to work wearing gym shoes. Mr. Williams was told by Defendant Sergeant Paul McGuire ("Sgt. McGuire") that he must wear state-issued boots to his work assignment and he was sent back to his cellhouse to change. On March 14, 2006, Mr. Williams went to medical and complained of foot pain from having to wear boots (Pltf's Ex. 8a). Mr. Williams was prescribed a twice daily Betadine foot soak by Dr. Feinerman (*Id.*). On March 17, 2006, Mr. Williams was issued a Medical Permission slip authorizing him to not wear state boots for six months (Pltf's Ex. 4a). Mr. Williams showed this medical permission slip to Sgt. McGuire. Based on this medical permission slip, Sgt. McGuire was on notice regarding Mr. Williams' medical condition. This was the only medical permission slip that Mr. Williams received during the relevant time period and his claims regarding a second medical permission slip were not credible. In fact, Defendants produced convincing evidence that the second permission slip that Mr. Williams referred to was issued in March of 2007 when Mr. Williams resided in a different housing unit. On one occasion, Mr. Williams did complain to Defendant Lieutenant Mark Boozer ("Lt. Boozer") that he was being made to wear state-issued boots. However, there is no evidence that Lt. Boozer was ever aware of Williams' medical permission slip during the time period relevant to his claims.

After receiving his medical permission slip, Mr. Williams was not forced to work though he did so, of his own accord, on some days. Further, there is no evidence that Defendants McGuire or Boozer ever 1) wrote him a disciplinary ticket for failing to wear state-issued boots or 2) sent him to administrative segregation for failing to wear state-issued boots (*see* Pltf's Exs. 1, 2, 3). Starting on March 8, 2006, Mr. Williams worked periodically until he was admitted into the health care Infirmary on April 15, 2006, where he was diagnosed with gangrene in his right great toe and foot (Pltf's Ex. 9a, 9b). Mr. Williams claims that he was forced to work every day during this period, except for

weekends, but the Court does not find this testimony credible. Eventually, early in May 2006, Mr. Williams was granted a medical furlough to the Kenneth Hall Regional Medical center where first, his right great toe and then, his right leg, below the knee, were amputated (Pltf's Ex. 13). Mr. Williams filed his first and only "Committed Person's Grievance" (the "Grievance") regarding these incidents on June 19, 2006 (Pltf's Ex. 2). Mr. Williams exhausted his administrative remedies when his Grievance was denied on appeal to the Administrative Review Board on September 17, 2006 (*Id.*).

## CONCLUSIONS OF LAW

### Deliberate Indifference

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In order prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious"; and secondly, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotations omitted); *see also*, *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007). With respect to the objective component of this inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005).

To establish deliberate indifference, a prisoner also must show that, subjectively, "prison officials acted with a sufficiently culpable state of mind." *Greeno*, 414 F.3d 645 at 653 (citations and quotation omitted). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-653 (7th Cir. 1985). Negligence, gross negligence, or even

"recklessness," as that term is used in tort cases, is not enough. *Id.* at 653*; Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate that prison officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"; (2) that the official actually drew the inference, and (3) then disregarded this substantial risk. *Greeno*, 414 F.3d at 653 (internal quotations omitted). While a series of negligent acts can evince a prison official's awareness of an inmate's exposure to a serious risk, "showing deliberate indifference through a pattern of neglect entails a heavy burden." *Zentmyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000) (quoting *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir.1999)). At bottom, demonstrating deliberate indifference requires inmates to clear a high threshold. *Dunigan ex rel. Nyman*, 165 F.3d at 590.

Here, as to both defendants, there is no argument regarding the first prong of Mr. Williams' deliberate indifference claim. In other words, the parties are in agreement that, objectively, diabetes is a sufficiently serious medical condition. As such, the resolution of Mr. Williams claims hinges on the subjective component of deliberate indifference. Specifically, did either of the defendants have a sufficiently culpable state of mind, as defined above, when they dealt with Mr. Williams, and his concerns regarding having to wear state-issued boots, while he worked under their supervision?

Defendant Lt. Mark Boozer

At the trial, Mr. Williams failed to demonstrate that Lt. Boozer knowingly disregarded a substantial risk of harm to him. This is true, in part, because Mr. Williams did not put forth any evidence that he actually provided his one medical permission slip ("permit") to Lt. Boozer. There was some evidence suggesting that Lt. Boozer was aware of Mr. Williams' issues regarding state-issued boots, but it was minimal. Lt. Boozer claimed that on one occasion, Mr. Williams approached him and said the Sgt. was making him wear boots. Lt. Boozer's response was something to the effect of

"do as you are told." This is reflected in one sentence from the Grievance Officer's Report ("Report") stating that, "[Lt. Boozer] informed inmate that he is required to wear state boots while on assignment per institutional rules" (Pltf's Ex. 3). This Report, however, goes on to state that "[a]t no time was inmate Williams threatened with segregation for not wearing state boots. Lt. Boozer stated inmate Williams was allowed to wear tennis shoes to work upon doctor's order to do so" (*Id.*).

Indeed, Lt. Boozer testified that Mr. Williams had never shown him a permit to wear tennis shoes, that he never saw such a permit, and that he only *assumed* that Mr. Williams had received such a permit because he later learned that Mr. Williams had been allowed to wear tennis shoes during other shifts. So, from the Record adduced at trial, there was insufficient evidence that Lt. Boozer was aware of facts from which an inference could be drawn that Mr. Williams faced a substantial risk of harm. As a result, Mr. Williams failed to meet his burden in this regard. Lt. Boozer was not deliberately indifferent to Mr. Williams' plight because he did not know about, perceive, or disregard, a substantial risk of harm to Mr. Williams.

Defendant Sgt Paul McGuire

Unlike Lt. Boozer, the Court finds that Sgt. McGuire was, in fact, on notice of Mr. Williams' issues regarding the effects of diabetes on his feet, and his desire not to wear state-issued boots. However, Mr. Williams failed to put forth evidence showing that Sgt. McGuire then deliberately disregarded this risk.

First, the potential substantiality of the risk of harm faced by Mr. Williams must be viewed from Sgt. McGuire's perception of that risk based on the information he had at the time in question. It is questionable whether—at the time that he first started supervising Mr. Williams on the administrative segregation work detail in March 2006—Sgt. McGuire actually understood that Mr. Williams indeed faced a substantial risk of harm. Sgt. McGuire apparently knew that Mr. Williams

had lost a toe in the past; and, as of March 17, 2006, Sgt. McGuire knew that Mr. Williams had a medical permission slip to wear gym shoes. Sgt. McGuire testified, however, that before he could honor such a permission slip, for security reasons, it needed to be signed off by the Assistant Warden. Sgt. McGuire further testified that he was a diabetic and that as a diabetic he preferred to wear work boots to better protect his feet. So, it's possible that—in spite of the medical permission slip and his knowledge of Mr. Williams' past history of diabetes-induced foot issues—Sgt. McGuire did not perceive a substantial risk of harm to Mr. Williams. While this is possible, the Court finds it more probable that—based on his knowledge of Mr. Williams' diabetic history and the medical permission slip—Sgt. McGuire reasonably drew the inference that Mr. Williams potentially faced a substantial risk of harm if he continued to wear work boots.

So, the resolution of Mr. Williams' claim against Sgt. McGuire then turns on whether Sgt. McGuire deliberately disregarded this substantial risk of harm. In this regard, Mr. Williams failed to put forth sufficient evidence to meet his burden. The Court may have reached a different conclusion if Mr. Williams had shown that he was forced to work every day, as he attempted to claim during his initial testimony. However, the Court did not find this portion of Mr. Williams' testimony credible because the Record reflects that he clearly was given many days off during the relevant (roughly) 45-day period.[2] The bottom line is that Mr. Williams was not forced to work. And, in reality, between the time when he started working as a porter in the administrative segregation unit on March 8, 2006, and when he was admitted to the infirmary on April 15, 2006, he only worked less than half of those days. Further, there was no evidence that either defendant ever threatened to send Mr.

---

2 Mr. Williams' credibility was further diminished when he introduced into evidence a purported second medical permission slip which is dated 3-21-07, but which Mr. Williams claims should have been dated 3-21-2006 (and someone actually wrote on the document "should be 2006"). At the trial, however, defendants definitively proved that—based on his housing assignments as tracked by a centralized database system—the date on this medical document was correct. So, the purported second medical permission slip was actually granted far outside the relevant period and thus, irrelevant to Mr. Williams' claims before the Court.

Williams to segregation if he refused to work; nor did either defendant ever write-up a disciplinary ticket for the days that Mr. Williams did not work. As such, when viewing these facts in aggregate, and as of the time these events were unfolding, Mr. Williams did not put forth sufficient evidence to show that Sgt. McGuire deliberately disregarded a substantial risk of harm.

Nonetheless, the Court is still troubled by the treatment given to Mr. Williams' medical permission slip. The Defendants' evidence, that allegedly Sgt. McGuire told Mr. Williams that there was a "two-step procedure" for obtaining a valid permit to wear gym shoes—a procedure not set forth in any administrative or internal directive, or any IDOC regulation, and not even mentioned by Defendants in their motion for summary judgment (Docs. 53, 54)—is dubious at best. Nevertheless, none of this conduct, even if questionable, rises to the level of *deliberately* disregarding a substantial risk of harm to the Plaintiff. As the Court noted above, demonstrating deliberate indifference requires plaintiffs to clear a high threshold; and negligence, gross negligence or even civil recklessness is not sufficient. *Duckworth*, 780 F.2d at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Here, based on all of the evidence in the Record, Mr. Williams has not met this threshold.

Final Analysis

Under any circumstance, having one's limb amputated is a serious tragedy. Mr. Williams faced just such a tragedy when his lower right leg was amputated on May 10, 2006. On June 19, 2006, Mr. Williams filed the Grievance that formed the foundation for his claims against Lt. Boozer and Sgt. McGuire in this case. The problem for Mr. Williams is that he wants this Court to view the facts through the lens of his tragic experience of losing a limb on May 10, 2006, *looking backward*, and then conclude that, inevitably, someone must have been deliberately indifferent to this substantial risk of harm; someone must be held responsible. But to the contrary, a deliberate indifference claim that hinges upon whether defendants had a sufficiently culpable state of mind, such as this one, must be

decided based upon what the defendants actually knew and actually did at the time the events unfolded.[3]

Here, the Court has found that Lt. Boozer, during the relevant time period, was not even aware of any specific facts suggesting that Mr. Williams was facing a substantial risk of harm. And, while Sgt. McGuire was on notice that Mr. Williams was a diabetic who had previously lost one toe, and had a medical permission slip to wear gym shoes, this does not automatically mean that Sgt. McGuire deliberately ignored these issues. Mr. Williams worked less than half of the relevant 45-day time period. Further, there is no evidence that either defendant forced Mr. Williams to work, or threatened him with disciplinary measures if he failed to work. Mr. Williams claims he feared that he would have been sent to segregation if he refused to work, but this fear alone is insufficient to demonstrate that any actual threats were ever made. These facts, in total, do not indicate that either Defendant was deliberately ignoring a substantial risk of harm to Mr. Williams.

To state a successful deliberate indifference claim, it is not enough to show that prison officials were aware of some risk of harm; instead, Mr. Williams needed to show that Lt. Boozer and Sgt. Williams were aware of a *substantial* risk of harm, and then *deliberately* disregarded that risk. When viewing the facts as of the time that Mr. Williams first started working in the administrative segregation unit in March 2006, *looking forward*, as this Court must, there is simply not enough evidence to show that either Defendant acted with a sufficiently culpable state of mind. Thus, neither Lt. Boozer nor Sgt. McGuire was deliberately indifferent to a substantial risk of harm to Mr. Williams.

---

3 It is also not clear from the evidence that wearing state-issued boots either caused or contributed to the loss of Mr. Williams' toe or leg; although, the resolution of this question is not essential to his claim.

**CONCLUSION**

Based on all the foregoing, the Court finds that Plaintiff Michael Williams has failed to establish that either Defendant violated the Eighth Amendment's proscription against cruel and unusual punishment. Accordingly, Judgment will be entered in favor of Defendants Lt. Mark Boozer and Sgt. Paul McGuire and against Plaintiff Michael Williams on all of his claims. Plaintiff shall take nothing from this action.

**IT IS SO ORDERED.**

DATED:   September 30, 2011

/s/ **Stephen C. Williams**
STEPHEN C. WILLIAMS
United States Magistrate Judge